IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 8, 2002 Session

## RUSSELL EPPERSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-01-217    Clayburn Peeples, Judge**

---

### No. W2001-02579-CCA-R3-PC - Filed August 9, 2002

---

The petitioner appeals the denial of his petition for post-conviction relief from his convictions for facilitation of aggravated rape, facilitation of especially aggravated kidnapping, facilitation of especially aggravated robbery, and aggravated burglary, raising three claims: (1) that he was denied the effective assistance of trial counsel; (2) that his guilty plea was involuntary; and (3) that the indictment was fatally defective. We affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Danny R. Ellis, Jackson, Tennessee, for the appellant, Russell Epperson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On January 23, 2001, the petitioner, Russell Ray Epperson, pled guilty in the Madison County Criminal Court to facilitation of aggravated rape, a Class B felony; facilitation of especially aggravated kidnapping, a Class B felony; facilitation of especially aggravated robbery, a Class B felony; and aggravated burglary, a Class C felony. Pursuant to the terms of his plea agreement, he was sentenced as a Range I, standard offender to an effective sentence of twenty years. The assistant district attorney general provided the following factual account of the crimes at the guilty plea hearing:

Your Honor, the State would show at the trial of the matter that on the 6th of September of 1999, the defendant did enter the habitation of Lucille Jones under the guise of asking for a glass of water.

While in the home, he struck her in the head with an object believed to be a vase, causing her to have serious injuries. Today she is here. She still has problems with her eye hurting. She is losing sight in one eye as a result of that blow. After the strike on the head, she was sexually penetrated without her consent. And during and after the rape, she was tied up with [a] cord and moved to another part of the residence. All that occurred here in Jackson, Madison County. Also, taken from her was her purse containing about $200.00.

On June 18, 2001, the petitioner filed a *pro se* petition for writ of habeas corpus, or, in the alternative, a petition for post-conviction relief, alleging, *inter alia*, that his trial counsel was ineffective and his guilty plea involuntary, and that the indictment failed to put him on notice of the crimes of which he was charged. Post-conviction counsel was appointed, and on September 27, 2001, an evidentiary hearing was held before the post-conviction court. During opening arguments at the evidentiary hearing, post-conviction counsel asserted that the petitioner's trial counsel was ineffective, *inter alia*, for failing to secure an alibi witness necessary for the proper defense of the case; that the petitioner's guilty plea was involuntary due to trial counsel's ineffective assistance and the fact that it was not performed in open court; and that an erroneous date contained on one count of the indictment prevented the petitioner from adequately preparing his defense.

The first witness at the evidentiary hearing was the petitioner's trial counsel, who testified that she graduated from Rutgers Law School in 1987, and had been an assistant public defender for approximately seven years. She said that her first contact with the petitioner occurred when she was appointed to represent him on his arraignment day. Shortly thereafter, she met with him to discuss his case and was told of his alibi, that he was claiming to have been in his mother's basement with a woman named Sylbrenda Smith at the time of the crime. Trial counsel testified that she spoke with Smith by telephone once, and made several attempts to have her subpoenaed. Smith appeared in court one time, on a day in which the case was continued at the request of the State. Trial counsel said that the case was originally set for trial on February 9, 2000, and that she did not recall the reason for the continuance.

Trial counsel said that Smith was not present on January 23, 2001, the final setting for the petitioner's trial. She explained on cross-examination that Smith was "elusive," never staying in one place very long, and making it difficult for the investigators from the public defender's office to keep up with her. According to trial counsel, they located Smith a couple of times, but she would then disappear, forcing trial counsel to send the investigators back out to look for her again. Although trial counsel attempted to learn Smith's whereabouts from her family members, she was unsuccessful. The petitioner's sister, however, was able to substantiate the alibi, and trial counsel

said that she had been prepared on the final trial date to present the petitioner's alibi defense with the testimony of the sister alone, if necessary.

Trial counsel further testified that she filed a number of motions in the case, including a Notice of Alibi, a Brady motion, a Motion in Limine for the Admissibility of Evidence, a Motion to Preserve Evidence, a Motion to Provide Witness Statements, a Motion for Disclosure of Impeaching Evidence, a Motion for a Morgan Hearing, and a Motion for Expert Services to request *ex parte* funds for a DNA expert to review the DNA evidence in the case. She denied that she filed these motions at the request of the petitioner, testifying that he had wanted to file other motions of his own, and did so. Trial counsel had no memory of whether she filed a Motion for a Speedy Trial, but said that if she had, it would have been at the request of the petitioner. She later identified her signature on a document entitled "Demand for Speedy Trial," which was filed on April 25, 2000, and admitted as an exhibit at the hearing. Trial counsel acknowledged that the document contained the petitioner's name in the caption, but the name of another defendant, "Daniel Lee Cole," in the body.

Trial counsel said that her DNA expert concurred in the findings of the Tennessee Bureau of Investigation ("TBI") laboratory, informing her that he believed the DNA evidence in the case "would be conclusive that it was [the petitioner] who committed the offense." For that reason, he "cautioned [her]" that he could not take the stand in the petitioner's defense. He was, however, prepared to provide assistance during her cross-examination of the TBI agent who performed the DNA analysis. She informed the petitioner of the expert's findings, and reviewed with him the discovery information she received from the State. She also discussed with him the contradiction between a police officer's affidavit stating that the victim's residence had been "broken in," and the victim's statement that she had opened the door to her assailant, as well as the victim's inability at the preliminary hearing to identify the petitioner as her attacker. Trial counsel acknowledged that there was a police report that contained the name of an officer who did not exist. She said that she assumed the report had been written by an actual police officer, and that the name at the end of the report was merely a typographical error. In her view, the report was not subject to impeachment because it was not a sworn document.

Trial counsel acknowledged that she had several trials during the week the petitioner pled guilty, including a rape trial in which the jury returned a verdict of guilty. She denied telling the petitioner that he could either plead guilty or spend the rest of his life in jail, and had no recollection of having told him that the judge was "a very harsh sentencer [sic]." She testified that she explained the range of punishments the petitioner could receive if convicted of the offenses, discussed the evidence for and against him, informed him of the guilty verdict in her earlier rape case in which the DNA evidence had been on her side, and told him that there was a probability that the DNA evidence against him in his case would convict him.

Trial counsel testified that the petitioner entered his guilty plea on the trial date, after the State came down from its original offer of forty years to her counteroffer, which the petitioner had previously approved, of twenty years. She said that the guilty plea hearing was held in the jury

room, and that the petitioner was not allowed to meet with his family beforehand. Her recollection was that the petitioner was "in the cage," which we presume to be a holding area, prior to entering his plea, and that there were jurors in the vestibule of the courtroom. She said that, when the petitioner decided to accept the offer, he was taken around the outside of the courtroom "to the jury room to perform the plea." Trial counsel testified that before the petitioner entered his plea, she fully informed him of his constitutional rights and the consequences of pleading guilty to the offenses. She was confident that the petitioner understood the sentence he was to receive, as well as the constitutional rights he was waiving, including his right to present his alibi defense.

The petitioner testified that he met with trial counsel seven or eight times, and with an investigator from her office four or five times. He said that he asked trial counsel to file six or seven motions on his behalf, but that she refused until after he had filed some motions on his own. She then filed the same motions he had filed, as well as some additional motions he requested. The petitioner also complained of trial counsel's failure to raise what he thought were important issues in the case; namely, the police report written by a nonexistent officer and the "perjury" committed by the officer who stated that the assailant had broken the victim's door to gain entry to her home.

The petitioner acknowledged that he read the guilty plea agreement before signing it. He further acknowledged that trial counsel explained the agreement to him, and that he told the trial court at the guilty plea hearing that he was satisfied with counsel's representation. He asserted however, that he pled guilty "mostly out of fear." The petitioner implied that he had felt intimidated by the fact that the plea was not taken in front of his family and friends, and that he had believed that trial counsel would not exert herself to defend him at trial. He testified that he had not asked for his family to be present during his plea because he had assumed they would be there. He said he had asked trial counsel if he could talk to his family before entering the plea, but she had told him he could see them afterwards.

The petitioner testified that trial counsel told him that she did not like the jury pool, and that the judge presiding over his case had been on a panel that was in favor of putting convicted rapists to death. According to his testimony, it "really shook [him] up" to learn that trial counsel did not think he would win his case. Trial counsel also indicated that he would be spending a "whole lot more than twenty years" in jail if he went to trial, making a statement "somewhat to [the] effect" that he would be spending the rest of his life in jail. Finally, trial counsel had used the assistant district attorney general's first name in addressing a letter to him, writing, "Dear Shaun: Here are some motions . . . . " The petitioner said he believed such unprofessional familiarity with "the enemy" showed that something was not "right" with the situation, and that it made him say (presumably to himself): "Well, if I don't take this [the plea], I know they're going to give me the shaft."

At the conclusion of the hearing, the post-conviction court denied the petition, issuing oral findings of fact and conclusions of law from the bench. The court subsequently issued a written order containing detailed findings of fact and conclusions of law. In its written order denying the petition, the post-conviction court found, *inter alia*: that the indictment was adequate to put the petitioner on notice of the charges he would be called upon to defend; that trial counsel "was well

prepared" and performed "well within the standards of those required in criminal cases"; and that the petitioner's guilty plea was knowing and voluntary.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. to appeal denied (Tenn. 1998) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S.

at 688, 104 S. Ct. at 2065; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate preparation. <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty, but instead would have insisted on going to trial. <u>See</u> <u>Shazel v. State</u>, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71, 88 L. Ed.2d 203 (1985)). "In cases involving a guilty plea or plea of nolo contendere, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." <u>Hicks v. State</u>, 983 S.W.2d 240, 246 (Tenn. Crim. App.), <u>perm. to appeal denied</u> (Tenn. 1998) (citing <u>Hill</u>, 474 U.S. at 59, 106 S. Ct. at 370; <u>Bankston v. State</u>, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. <u>See</u> <u>Henley</u>, 960 S.W.2d at 580. For this reason, courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that the evidence shows that trial counsel was deficient for failing to secure the appearance of his alibi witness, failing to file motions until requested by the petitioner, delaying in filing a motion for a speedy trial, having the wrong defendant's name in the body of the speedy trial motion, and failing to investigate the police report that contained the name of the nonexistent officer and the affidavit of the officer who stated that the entry into the victim's home was by force. He argues that trial counsel's failure to "actively secure" his defense, combined with the delay in his trial, prevented him from being able to present his alibi defense, thereby prejudicing the outcome of his case.

In denying relief on this claim, the post-conviction court found that the petitioner failed to show any deficiency in trial counsel's representation, or that he was in any way prejudiced by counsel's performance. The record fully supports these findings. Trial counsel's testimony indicates that she thoroughly prepared the petitioner's case. She testified that she filed a number of motions on her own initiative, including a motion for expert services. Additionally, she interviewed all the

witnesses in the case, including the police officers; received and reviewed discovery from the State; discussed the evidence with the petitioner; and fully informed the petitioner of the consequences of pleading guilty. She also made every effort to secure Smith's appearance at the petitioner's trial, sending investigators out to search for her and speaking with her family in an attempt to determine her whereabouts. Trial counsel did not believe there was anything else she could have done to secure Smith's appearance, and the petitioner has not shown that there was anything else that could have been done. Furthermore, as the State points out, by not calling Smith as a witness at the evidentiary hearing, the petitioner was unable to show what her testimony would have been had she appeared to testify at his trial.[1] Thus, even if he had successfully met the deficient performance prong of the <u>Strickland</u> test, he would still be unable to demonstrate that counsel's deficiency prejudiced the outcome of his case.

The petitioner also failed to show how trial counsel was deficient for failing to investigate the inconsistencies in the police report and police officer's affidavit, which he believed should have been raised as issues, or how any alleged deficiency in this regard prejudiced his case, causing him to plead guilty instead of proceeding to trial. Trial counsel testified that there was no question that the unsworn police report was real and had been written by a police officer, and that she had assumed that it merely contained a typographical error in the officer's name. She also testified that she talked to all the witnesses in the case, including the police officers involved, and that she discussed with the petitioner the affidavit of the police officer who stated that the victim's residence had been forcibly entered. Trial counsel further testified that she was fully prepared to go to trial with the petitioner's alibi defense at the time that he entered his plea of guilty.

Finally, we disagree that trial counsel's failure to file a motion for a speedy trial until April 25, 2000, or the fact that the motion contained the wrong defendant's name in the body, demonstrates any deficiency in counsel's performance. With the exception of the single instance of the wrong defendant's name in the body of the motion, all of the other information in the "Demand for Speedy Trial" appears to be correct. A single typographical error in a routine motion for a speedy trial does not constitute deficient performance. Nor can the petitioner show how a minor error caused him to plead guilty when he otherwise would have insisted on going to trial. In sum, by failing to show either a deficiency in counsel's performance or how any alleged deficiency caused him to plead guilty instead of proceeding to trial, the petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of trial counsel. The record fully supports the post-conviction court's findings in this regard.

### III. Voluntariness of Guilty Plea

The petitioner contends that his guilty plea was involuntary because trial counsel led him to believe he had no choice but to plead guilty, and because the guilty plea hearing was not held in the

---

[1]Post-conviction counsel advised this court during oral argument that he had been unable to locate Sylbrenda Smith to obtain her testimony at the post-conviction hearing.

courtroom, where his family and friends could have been witnesses. The State responds that a hearing held on the record in the jury room satisfies the "open court" requirement of Tennessee Rule of Criminal Procedure 11(c), as well as the requirements of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), and argues that the evidence shows the defendant entered his plea knowingly, intelligently, and voluntarily. We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Since the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the guilty plea hearing reveals that the trial court carefully and correctly informed the petitioner at length of his constitutional rights, and specifically asked if he understood that he was waiving those rights, including his right to present an alibi defense, by pleading guilty. The petitioner responded in the affirmative, testifying under oath that he was not under the influence of any narcotics, drugs, or alcohol, that he understood the full consequences of his plea, that no threats or coercion had been brought against him to induce him to accept the plea, and that he was entering into the plea knowingly and voluntarily.

The petitioner argues that the totality of counsel's alleged deficiencies in performance, combined with her indication that he would be convicted based on the DNA evidence if he went to trial, served to coerce his guilty plea. We respectfully disagree. We have previously concluded that the petitioner's allegations of deficient performance on the part of trial counsel are without merit. We conclude, likewise, that there is no merit to his claim that counsel's advice regarding the risk he stood by going to trial served to coerce his guilty plea. Trial counsel's DNA expert had concurred in the findings of the TBI, concluding that the DNA evidence conclusively linked the petitioner to

the rape. The State also had a witness who was prepared to testify that he had seen the petitioner in the vicinity of the victim's residence the evening of the crime. We additionally note that, although the ninety-year-old victim was apparently unable to identify the petitioner as her assailant at the beginning of the preliminary hearing, she responded in her later testimony at the hearing that he was the man who entered her residence and attacked her, answering, "Yes, sir. Yes," when the trial court sought to clarify if she was identifying the petitioner as the perpetrator. She added that the defendant's "mama's name" was Juanita Epperson and that "[h]e's the one done the dirt." In spite of all the evidence against the petitioner, trial counsel testified that she had been prepared to go to trial, and stood ready to try the petitioner's alibi defense had he so desired. Thus, although the evidence against him may have been unpleasant for the petitioner to face, and he may have been unhappy when trial counsel informed him of his probability of being convicted if he went to trial, he was in no way coerced by trial counsel's advice into pleading guilty.

The petitioner additionally contends that his guilty plea was involuntary because it was not held in the courtroom in front of his family and friends. In support, he cites Tennessee Rule of Criminal Procedure 11(c), which provides that the trial court, in the context of accepting a guilty plea, must address the defendant "personally in open court." However, as the State points out, the petitioner cites no law in support of his claim that his plea was involuntary because it was taken in the jury room, and there is nothing in the rule to indicate that "open court" must be the actual courtroom. We find it sufficient that the guilty plea hearing was held with the trial court, the petitioner, his trial counsel, and the assistant district attorney general present and was transcribed by the court reporter. The transcript of that hearing does not show that the petitioner raised any objections or questions about the location of the hearing or the manner in which it was conducted. We note that the petitioner was 36 years old at the time of his pleas of guilty. The record does not reflect that the location of the hearing had any effect on the petitioner's decision to plead guilty or his understanding and waiver of his rights. We, therefore, conclude that the record supports the post-conviction court's determination that the petitioner's guilty plea was knowing and voluntary.

## IV. Sufficiency of Indictment

As his final issue, the petitioner contends that the indictment was fatally defective, therefore robbing the trial court of jurisdiction over his case. Specifically, he argues that the indictment was defective because one count contained an erroneous date of September 5, 1998, as the date of the offense, and because the indictment failed to list the aggravating factors for his crimes. The State argues that the petitioner has waived the issue by his failure to provide citing references to the record, and even if not waived, the post-conviction court correctly found that the indictment was: (1) adequate to put the petitioner on notice of the charges he would be required to defend; (2) sufficient for the trial court to enter judgment on the offense; and (3) sufficient for the petitioner to raise any double jeopardy claims. Once again, we agree with the State.

Although the petitioner included a copy of the indictment as an appendix to his brief, the indictment itself is not part of the record before this court. It was the duty of the petitioner to provide an adequate record for appellate review. See Tenn. R. App. P. 24(b). "When a party seeks

appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). Generally, when the appellate record is inadequate, the appellate court is precluded from considering the issue, and the trial court's ruling is presumed correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

However, utilizing the copy of the indictment included within the petitioner's brief, we conclude that this claim is without merit. Our supreme court has held an indictment to be valid if it "provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997) (citations omitted). The exact date of an offense need not be included in the indictment unless it is a material element of the offense. State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991). Moreover, indictments which reference the relevant statute have been found to be sufficient even though they omit an essential element of the offense. See State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999); Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998). In State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000), our supreme court stated that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements."

The indictment charges the petitioner in Counts 1, 2, and 3, respectively, with the aggravated rape, especially aggravated kidnapping, and especially aggravated robbery of the victim "on or about September 6, 1998," and in Count 4 with the aggravated burglary of her residence, with the intent to commit aggravated rape and/or aggravated robbery, "on or about September 5, 1998." We note that all of these offenses were connected and alleged to have occurred before the return of the indictment on April 5, 1999. A common sense explanation of the differing dates of the indictment is that an error was made in setting out the date that the offense in Count 4 had occurred, especially since it alleged that the burglary was committed to commit the rape and robbery alleged in Counts 1 and 3. The post-conviction petition alleges that the differing "September 5" date is "significant to the outcome of petitioner's alibi defense and the identity of the real perpetrator." However, the petitioner did not testify at the post-conviction hearing as to these allegations, and we note that he claimed to have an alibi as to September 6, not September 5. Accordingly, we fail to understand how the defense was prejudiced by the differing dates.

We note, further, that the petitioner has been quite active from the time of his arrest both in filing his own motions and in urging counsel to file motions. He did not testify as to whether a pretrial motion had questioned the date alleged in Count 4 or exactly when he had discovered the discrepancy. We respectfully disagree that the differing date caused Count 4 to be fatally defective. In our view, the indictment was clearly sufficient to achieve "the overriding purpose of notice" to the petitioner of the charges he would be called upon to defend. As for the petitioner's argument that Count 1 of the indictment, charging aggravated rape, was invalid for failing to list the aggravating factors for this offense, we note that the indictment alleged that the victim sustained "bodily injury,"

thus elevating the offense to aggravated rape.[2]  Therefore, we conclude that the record fully supports the findings of the post-conviction court that the indictment was sufficient to notify the petitioner of the charges against him and to raise a double jeopardy claim, if necessary.

## CONCLUSION

We conclude that the petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of counsel.  We further conclude that the petitioner's guilty plea was voluntary, and that the indictment was not fatally defective.  Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

---

[2]The petitioner's claims are such that we cannot ascertain whether, by his theory, the entire indictment is defective or only that count alleging aggravated rape.